IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL DAVID MCCARL,               )
                                    )
            Plaintiff,              )
                                    )
    vs.                             )   Civil Action No.  2:13-1803
                                    )
CAROLYN COLVIN, Acting Commissioner )
of Social Security,                 )
                                    )
            Defendant.              )
                                    )

AMBROSE, Senior District Judge

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 9 and 12). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 8 and 10). Plaintiff also has filed a Concise Statement of Material Facts and a Reply Brief in support of his Motion. (Docket Nos. 8, 15). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion (Docket No. 12) is granted and Plaintiff's Motion (Docket No. 9) is denied.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff applied for SSI on or about May 10, 2011. In his application, he alleged that he had been disabled since May 1, 1999 (later amended to June 1, 2011), due to ADHD, bipolar disorder, social anxiety, ODD, depression, and

1

a learning disability. (R. 31, 127-133, 143, 150-157).   Administrative Law Judge ("ALJ") William J. Bezego held a hearing on August 14, 2012, at which Plaintiff was represented by counsel. (R. 28-50).   Plaintiff appeared at the hearing and testified on his own behalf.  Id.  Plaintiff's mother, Kathryn McCarl, and a vocational expert also were present at the hearing and testified.  (R. 39-49).  In a decision dated August 28, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act.   (R. 12-23).   On October 16, 2013, the Appeals Council denied Plaintiff's request for review.   (R. 1-5).   Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment.   (Docket Nos. 9 and 12). The issues are now ripe for my review.

## II.  LEGAL ANALYSIS

### A.  STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate."  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).   Determining whether substantial evidence exists is "not merely a quantitative exercise."  Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id.  The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.

1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity

3

(step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B. **WHETHER THE ALJ ERRED IN HIS ASSESSMENT OF PLAINTIFF'S MENTAL RESIDUAL FUNCTIONAL CAPACITY ("RFC") BY FAILING TO INCLUDE HIS "EXTREMELY SLOW PROCESSING SPEED" AND IN FAILING TO COMPLY WITH SOCIAL SECURITY RULING 11-2P**

The ALJ found that Plaintiff had severe impairments, including bipolar affective disorder, attention deficit hyperactivity disorder, and generalized anxiety disorder. (R. 14). He further found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: he was limited to only routine, repetitive tasks, with only occasional interaction with the public, coworkers, and supervisors; and no production rate pace work, but rather goal oriented type work. (R. 16-21). The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act. (R. 21-22).

Plaintiff argues the ALJ's findings are deficient because he failed to include Plaintiff's "extremely slow processing speed" in his RFC assessment and failed to comply with Social Security Ruling 11-2p, which applies to evaluating disabilities for younger adults. Pl.'s Br. [ECF No. 10] at 2-9.[1] After careful review of the record, applicable regulations, and relevant case law, I disagree.

---

[1] Plaintiff was born on May 15, 1993, and was 18 years old, a "younger individual," when he filed his current application for benefits. (R.21, 127).

4

**1. Slow Processing Speed**

The responsibility for deciding a claimant's RFC rests with the ALJ and is based on the entire record. 20 C.F.R. §§ 416.945, 416.946. In his opinion, the ALJ must provide sufficient explanation of his final determination to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Here, Plaintiff argues that the ALJ's RFC finding fails to account for his "extremely slow processing speed." I disagree.

Plaintiff spends several pages of his brief citing record evidence of his alleged "slow processing speed." See Pl.'s Br. [ECF No. 10] at 5-9, and exhibits cited therein. Contrary to Plaintiff's suggestion, however, the ALJ did not ignore this evidence. Rather, he cited to and discussed all of the referenced exhibits in his opinion. This evidence includes records from the Office of Vocational Rehabilitation ("OVR") detailing Plaintiff's participation in job programs such as the Career Opportunities for the Disabled ("COD")'s STARR[2] Project; information and documentation from Plaintiff's job coach and OVR counselor; psychological evaluation results; testimony and statements from Plaintiff's mother; Plaintiff's own testimony; and testimony and documentation concerning Plaintiff's activities of daily living. See R. 16-20 (citing Exs. 1A, 3E, 8E, 9E, 11E, 3F, 6F, 8F, 9F). Moreover, in discussing the relevant evidence, the ALJ specifically acknowledged Plaintiff's claimed limitations regarding processing speed. See, e.g., R. 16 (noting Plaintiff's testimony that he has problems with concentration and memory due to ADHD and will not complete tasks); 17 (alleged termination from grocery store job due to being slow and unable to keep up); 18 (noting alleged difficulty working at a steady pace); 18 (acknowledging mother's testimony that Plaintiff is easily distracted and needs reminders to complete tasks in a timely manner). Based on the record evidence, the ALJ incorporated restrictions in his RFC

---

[2] STARR stands for "Students Transitioning Achieving and Reaching Resources." (R. 19 & Exs. 8E, 9E).

finding to account for Plaintiff's pace difficulties. In particular, the RFC finding limited Plaintiff to only routine, repetitive tasks, with only occasional interaction with the public, coworkers, and supervisors; and stated that Plaintiff could not perform production rate pace work, but rather goal oriented type work.

To the extent Plaintiff argues that the evidence regarding Plaintiff's slow processing speed supports even greater limitations, the ALJ more than adequately explained in his Opinion why such evidence was not fully credible and/or was entitled to less than full weight. See, e.g., R. 17 (citing OVR/COD records noting discrepancies in Plaintiff's pace at work and that Plaintiff demonstrated good work performance, speed, and completion of work when supervised or with other employees); 17-18 (OVR records noting that the grocery store was willing to work with Plaintiff concerning work pace, but terminated him for theft); 18-19 (evidence Plaintiff was successful in carrying out part-time job delivering flyers; work demands included speed, judgment; thoroughness, independence, counting brochures, and reading a map); 21 (considering, but assigning little weight to, OVR counselor's opinion that Plaintiff was not able to benefit from competitive employment due to, inter alia, below average work speed, because issues of disability are reserved to the Commissioner and the counselor's opinion conflicted with other record evidence); see also infra, Section II.C (discussing ALJ's evaluation of medical evidence).

For these reasons, I find that remand on the issue of Plaintiff's processing speed is not warranted.

**2. Social Security Ruling 11-2p**

Social Security Ruling 11-2p provides guidance on how the agency evaluates disability in young adults (ages 18-"approximately 25"). S.S.R. 11-2p, 2011 WL 4055665 (Sept. 12, 2011). SSR 11-2p directs that, in evaluating such claims, the ALJ apply the same definition of disability

used for other adults.  Id. at *2.  Appropriate sources of evidence about a young adult's ability to work include medical sources; non-medical sources such as family members and educational personnel; and school programs.  Id. at **4-6.  Other relevant considerations in evaluating a young adult's impairment-related limitations include evidence regarding functioning from educational programs; community experiences, including job placements; psychosocial supports and highly structured or supportive settings; extra help and accommodations; and work-related stress.  Id. at **6-10.  Evidence that a claimant has difficulties in the above areas does "not necessarily establish that a young adult is disabled, only that the person may have limitations that affect what work he or she may be able to do."  Id. at *7.

I disagree with Plaintiff that the ALJ's analysis failed to comply with SSR 11-2p.  To the contrary, the ALJ conducted exactly the kind of careful and thorough analysis that the Ruling envisions.  In addition to Plaintiff's mental health treatment records, the ALJ extensively discussed in his lengthy opinion numerous considerations relevant to young adults highlighted in Ruling 11-2p, such as Plaintiff's school records; voluminous OVR and COD records detailing Plaintiff's participation in job programs such as the STARR Project; information and documentation from Plaintiff's job coach and OVR counselor; psychological evaluation results; testimony and statements from Plaintiff's mother; Plaintiff's own testimony; and testimony and documentation concerning Plaintiff's activities of daily living.  See R. 16-20 (citing Exs. 1A, 3E, 8E, 9E, 11E, 3F, 6F, 8F, 9F).

Again, Ruling 11-2p provides guidance as to what types of evidence the ALJ should consider in cases involving young adults; it does not mandate a finding of disability merely because such records exist and/or demonstrate limitations.  Simply because Plaintiff disagrees with the conclusions the ALJ drew from the evidence he examined does not demonstrate a violation of SSR 11-2p.  See Eissfeld v. Comm'r of Soc. Sec. Admin., No. 3:13-cv-00873-KI,

7

2014 WL 1874073, at *3 (D. Or. May 8, 2014) (rejecting challenge based on SSR 11-2p where, at its crux, Plaintiff's argument was not that the ALJ failed to comply with the Ruling, but that he made the wrong inferences from the evidence he did consider). Here, the ALJ more than adequately examined the relevant record evidence. As explained in this Opinion, this evidence supports the ALJ's finding that, although limited, Plaintiff was capable of performing jobs that exist in the national economy and, thus, was not disabled under the Act.

C. **WHETHER THE ALJ ERRED BY FAILING TO GIVE THE OPINIONS OF PLAINTIFF'S TREATING MENTAL HEALTH PROVIDERS APPROPRIATE WEIGHT**

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 416.927(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole,

the more weight [the ALJ generally] will give to that opinion." Id. § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. § 416.927(d)(1), (3); Dixon v. Comm'r of Social Security, 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter, 642 F.2d at 705. In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008).

Here, Plaintiff argues the ALJ's findings are deficient because he improperly rejected the

opinions of treating therapist Melissa McKee, LSW and psychiatrist, Gerald M. Streets, M.D. of Family Psychological Associates. Pl.'s Br. [ECF No. 10] at 9-15 (citing Ex. 9F, R. 567-571). Specifically, Plaintiff takes issue with the ALJ's decision to give "little weight" to portions of an August 1, 2012 Medical Source Statement in which these providers opined that Plaintiff's impairments would cause him to be absent from work approximately three times per month and rated his then-current GAF as 50, or serious symptoms.[3] (R. 20). After careful review of the record, applicable regulations, and relevant case law, I disagree.

As an initial matter, the ALJ did not discount the Medical Source Statement entirely and did not disagree with all of the limitations set forth therein. Rather, the ALJ gave "considerable weight" to the portions of the Medical Source Statement opining that Plaintiff had fair to good ability to perform unskilled work; fair ability to perform skilled work; and fair to good abilities to interact with the general public and maintain socially appropriate behavior. (R. 21 & Ex. 9F).[4] The ALJ explained that he gave little weight to the portions of the Medical Source Statement in dispute (i.e., the GAF score and opinion regarding absences from work) because those opinions were unsupported in the underlying mental health treatment records and the record as a whole.

---

[3] The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003). A GAF of 21-30 indicates behavior that "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR"). A GAF of 31-40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." Id. A GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning." Id. A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Id. A GAF from 61-70 reflects "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." Id.

[4] The Medical Source Statement defines "good" as "[a]bility to function in this area is limited but satisfactory." (R. 570). The statement defines "fair" as "[a]bility to function in this area is seriously limited, *but not precluded.*" Id. (emphasis added). Contrary to Plaintiff's suggestion, these definitions describe limitations, but not a total inability to work. Although the form also contained a column labeled "poor or none," meaning "[n]o useful ability to function in this area," the treatment providers did not rate any of Plaintiff's abilities as falling into that category. (R. 570-571).

(R. 20). These are appropriate reasons for giving a treating physician's opinion less than controlling weight. 20 C.F.R. § 416.927.

Upon review, I find that the ALJ supported his findings with substantial evidence of record. See R. 20-21 (citing Exs. 1A, 9E, 3F, 6F, 8F, 9F). For example, while the Medical Source statement rated Plaintiff's GAF as 50, relevant underlying treatment records from the same practice, which document at least 15 appointments over the preceding year, consistently rated Plaintiff's GAF as between 55 and 64, reflecting only moderate to mild symptoms. See R. 20 (citing Exs. 6F, 8F).[5] The ALJ further accurately noted that while the Medical Source Statement stated that Plaintiff has frequent aggressive physical and verbal outbursts approximately three times per week, the underlying records state that Plaintiff's outbursts occur only 3-4 times per year. (R. 20 & Ex. 8F). The Medical Source Statement also indicated that Plaintiff has a "severe sleep disturbance" that impacts his overall stability of mood. (R. 569). As the ALJ explained, however, the underlying records consistently describe Plaintiff's sleep as "okay," "good," and fair." (R. 534-540, 556-564). Although the records described a sleep disturbance in January 2012, subsequent records indicate that Plaintiff's sleep improved with medication. (R. 557-564). In May, 2012, Plaintiff denied drowsiness or other adverse effects that may impair his driving abilities. (R. 20, 559). In addition to the underlying treatment records, the ALJ cited to the GAF score of 52 that psychologist Suzanne Houk (who evaluated Plaintiff at OVR's request) assigned to Plaintiff, indicating moderate symptoms. (R. 20, Ex. 3F). He also credited the opinion of State agency psychologist Melissa Diorio, who concluded in June 2011 that Plaintiff was capable of performing simple, routine, repetitive tasks in a stable work environment and

---

[5] Plaintiff's argument that the ALJ's reliance on Plaintiff's GAF scores was misplaced is without merit. Although a particular score does not necessarily correlate with an individual's ability to work, GAF scores are medical evidence that can inform the ALJ's judgment of whether an individual is disabled. See Rios v. Comm'r of Soc. Sec., 444 F. App'x 532, 535 (3d Cir. 2011). Moreover, the *inconsistency* between the GAF score in Plaintiff's Medical Source Statement and those in the underlying treatment records itself supports the ALJ's decision to give the outlying GAF score in the Medical Source Statement little weight.

maintaining socially appropriate behavior. (R. 21, Ex. 1A). The ALJ further pointed to Plaintiff's activities of daily living, including independent personal care; assisting with the care of a pet; doing household chores, including laundry, cleaning the bathroom, and cleaning his bedroom; driving; shopping; volunteering at church; pursuing hobbies such as acting, reading, music, and writing; swimming; spending time with friends; taking vacations with his family; and working part-time. (R. 15, 18, Exs. 3E, 11E, Pl.'s Testimony). For all of these reasons, the ALJ properly gave little weight to the portions of the Medical Source Statement concerning Plaintiff's GAF score and work attendance.

In short, I find the ALJ did not err in weighing the medical opinions and other evidence of record. Substantial evidence supports the ALJ's conclusion that, although limited, Plaintiff was capable of performing some substantial gainful activity. Accordingly, remand on this issue is unwarranted.

### D. WHETHER THE ALJ IMPROPERLY REJECTED STATEMENTS MADE BY PLAINTIFF'S MOTHER, KATHRYN McCARL

Plaintiff argues that the ALJ erred in finding that the statements and testimony of Plaintiff's mother, Kathryn McCarl, were contradicted by the other record evidence and, therefore, were not "entirely credible." Pl.'s Br. [Docket No. 10] at 15-16. Plaintiff contends that Mrs. McCarl's statements were indeed consistent with the other evidence of record "which all confirm Mr. McCarl's extremely slow processing speed." Id. at 16. I disagree.

Plaintiff is correct that an ALJ must consider and weigh any non-medical evidence before him, including testimony of lay witnesses such as a claimant's parents. See Burnett v. Comm'r of Soc. Sec. Admin, 220 F.3d 112, 122 (3d Cir. 2000). Although the ALJ need not credit non-medical testimony that is inconsistent with other record evidence, he must explain his reasons for rejecting such testimony. See id. In a lengthy paragraph in his thorough opinion,

the ALJ here did just that. Specifically, the ALJ acknowledged Mrs. McCarl's testimony and written statement that Plaintiff had disabling limitations, including a constant need for reminders to stay on task and complete tasks in a timely manner, and an increase in mood swings and angry outbursts. See R. 18 (citing Mrs. McCarl's testimony and written statement); see also R. 39-46; 279-282. The ALJ did not dismiss Mrs. McCarl's statements outright, but explained that he did "not find them entirely credible to the extent they are contradicted by the other evidence of record, including the job coach and OVR assessments of the claimant's work capabilities, the mental health treatment records, and the medical evidence of record, which do not document disabling mental limitations." (R. 18). After a review of the record, I find that there is substantial evidence to support this finding of the ALJ. See, e.g., R. 16-21 & Exs. 8E, 9E (OVR and job coach records); 3F, 6F, 8F, 9F, 1A (mental health treatment records and other medical evidence). Accordingly, I do not find any error in this regard.[6]

### E. WHETHER THE HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT WAS DEFICIENT BECAUSE IT FAILED TO FULLY REFLECT PLAINTIFF'S LIMITATIONS

Plaintiff argues that the ALJ's hypothetical question to the Vocational Expert ("VE") was deficient because it did not "expressly or sufficiently" include Plaintiff's "extremely slow processing speed." Pl.'s Br. [ECF No. 10] at 17. Plaintiff contends that this "error" is not harmless because the VE testified that there would not be any jobs for someone "who would be off task at least 20 percent of a workday" or for someone who "needs to be redirected to get back on track more than once per hour." Id. (citing R. 48-49). This argument is without merit. An ALJ is only required to accept the VE's responses to hypothetical questions that accurately reflect a claimant's impairments. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984);

---

[6] Plaintiff's argument that Mrs. McCarl's testimony confirms Plaintiff's "extremely slow processing speed" does not change this result. As set forth more fully in this Opinion, the record evidence, taken as a whole, does not demonstrate that Plaintiff's processing speed was totally disabling. Further, the ALJ's Opinion and RFC finding adequately acknowledge and account for the limitations caused by Plaintiff's impairments, including slow processing speed. See Section II.B.1, supra.

13

Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). In this case, the record reveals substantial evidence that the hypothetical questions the ALJ adopted accurately reflected Plaintiff's impairments. (R. 16-22; 47-49). As set forth in the preceding sections, the record evidence does not support the additional limitations Plaintiff contends the ALJ should have included.

Plaintiff further argues that the ALJ's hypothetical question to the VE inadequately accounted for his moderate limitations of concentration, persistence, and pace. Pl.'s Br. [ECF No. 10] at 16-20. I disagree. Plaintiff does not challenge the ALJ's characterization of his limitations in the areas of concentration, persistence, and pace as moderate. He argues, however, that the hypothetical question to the VE did not adequately reflect moderate deficiencies in these areas. In particular, Plaintiff cites Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004) and related cases, for the proposition that a limitation to simple, routine tasks does not adequately account for a claimant's moderate deficiencies in pace. Pl.'s Br. [ECF No. 10] at 16-20. Plaintiff's reliance on these cases is misplaced.

As an initial matter, numerous courts within this Circuit, have distinguished Ramirez, holding that a limitation to simple, routine tasks sufficiently addresses "moderate" deficiencies in concentration, persistence, and pace. See, e.g., McDonald v. Astrue, 293 F. App'x 941, 946-47 (3d Cir. 2008); Menkes v. Astrue, 262 F. App'x 410, 410-12 (3d Cir. 2008); Padilla v. Astrue, Civ. A. No. 10-cv-4968, 2011 WL 6303248, at *10 (D.N.J. Dec. 15, 2011) (citing cases); Watson v. Colvin, No. 12-552, 2013 WL 5295708, at *5 (W.D. Pa. Sept. 18, 2013); Polardino v. Colvin, No. 12-806, 2013 WL 4498981, at *3 (W.D. Pa. Aug. 19, 2013); Haines v. Astrue, Civ. Action No. 11-309, 2012 WL 1069987, at *1 n.1 (W.D. Pa. Mar. 29, 2012). Furthermore, and in any event, the ALJ in this case did not merely limit Plaintiff to simple, routine tasks. Rather, his hypothetical question to the VE (and his RFC finding) restricted Plaintiff to jobs "requiring the performance of

only routine, repetitive tasks with only occasional interaction with the public, coworkers, and supervisors" and "[n]o production rate pace work but rather goal oriented type work." (R. 16, 47-48). These additional limitations go beyond simple, routine tasks, and more than adequately address Plaintiff's moderate limitations on concentration, persistence, and pace. See, e.g., Haines, 2012 WL 1069987, at *1 n.1.

Because the ALJ properly accounted for Plaintiff's mental limitations supported by the record in formulating his hypothetical question to the VE, remand on this point is unwarranted.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL DAVID MCCARL,

    Plaintiff,

vs.

CAROLYN COLVIN, Acting Commissioner of Social Security,

    Defendant.

Civil Action No. 2:13-1803

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 10th day of February, 2015, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that it is ordered that Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED, and Plaintiff's Motion for Summary Judgment (Docket No. 9) is DENIED.

                  BY THE COURT:

                  /s/ Donetta W. Ambrose
                  Donetta W. Ambrose
                  U.S. Senior District Judge